(C.D. 2239)

F. W. MYERS & CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided March 8, 1961)

*Barnes, Richardson & Colburn* (*James F. Donnelly* and *J. Bradley Colburn* of counsel) for the plaintiff.

*William H. Orrick, Jr.*, Assistant Attorney General (*Henry J. O'Neill*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: In this cause of action, plaintiff challenges the decision of the collector of customs in classifying an importation of nickel-cobalt briquettes as articles or wares, not specially provided for, composed wholly or in chief value of nickel or other metal, whether wholly or partly manufactured, upon which duty was imposed at the rate of 22½ per centum ad valorem, as provided in paragraph 397 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 397), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802.

The jurisdiction of the court was invoked by a protest filed by plaintiff, pursuant to the provisions of section 514 of said act (19 U.S.C. § 1514).

By its protest, plaintiff makes the following alternate claims:

1. Paragraph 1734 of the Tariff Act of 1930 (19 U.S.C. § 1201, par. 1734), as amended by Public Law 723, 84th Congress, approved July 16, 1956, which grants exemption from duty of certain metal articles.

2. Paragraph 389 of said act (19 U.S.C. § 1001, par. 389), as modified by the General Agreement on Tariffs and Trade, *supra*, at a rate applicable to the nickel content, and paragraph 1652 (19 U.S.C. § 1201, par. 1652), with respect to the cobalt content.

3. Section 508(a) of said act (19 U.S.C. § 1508(a)), as amended by the Customs Simplification Act of 1953, 88 Treas. Dec. 186, T.D. 53318, if the merchandise "is not readily segregable," the entire impor-

tation is dutiable at the rate provided in paragraph 389 of said act, as modified, *supra*.

The statutes referred to, so far as pertinent, read as follows, certain portions being stressed:

Classified in paragraph 397, as modified, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:

\*     \*     \*     \*     \*     \*     \*

Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer:

Woven wire fencing and woven wire netting, \* \* \*

\*     \*     \*     \*     \*     \*     \*

Other \* \* \*_____ 22½% ad val.

Claimed:

Paragraph 1734 of said act, as amended by Public Law 723, 84th Congress:

Ores of gold, silver, or nickel; *nickel-containing material in powder, slurry, or any other form, derived from ore by chemical, physical, or any other means, and requiring further processing for the recovery therefrom of nickel or other metals*; nickel matte; nickel oxide; ores of the platinum metals; sweepings of gold and silver. [Italicized portions added by Public Law 723.]

Paragraph 389 of said act, as modified, *supra*:

Nickel, and alloys (except those provided for in paragraph 302 or 380, Tariff Act of 1930) in which nickel is the component material of chief value:

In pigs or ingots, shot, cubes, grains, cathodes, or similar forms _____ 1¼¢ per lb.

Paragraph 1652:

Cobalt and cobalt ore. [Free entry.]

Section 508(a), as amended, *supra*:

(a) Whenever dutiable merchandise and merchandise which is free of duty or merchandise subject to different rates of duty are so packed together or mingled that the quantity or value of each class of such merchandise cannot be readily ascertained by the customs officers (without physical segregation of the shipment or the contents of any entire package thereof), by one or more of the following means: (1) Examination of a representative sample, (2) occasional verification of packing lists or other documents filed at the time of entry, or (3) evidence showing performance of commercial settlement tests generally accepted in the trade and filed in such time and manner as may be prescribed by regulations of the Secretary of the Treasury, and if the consignee or his agent shall not segregate the merchandise pursuant to subsection (b), then the whole of such merchandise shall be subject to the highest rate of duty applicable to any part thereof.

At the trial, the two witnesses who testified were called by the plaintiff through whom 13 exhibits were introduced. The testimony

and exhibits will be referred to wherever deemed necessary in the course of this opinion.

Plaintiff, in its brief, presents the issues as follows:

1. Are the mixed metals, which have been pressed into briquette form for convenience in handling and transportation, entitled to free entry in paragraph 1734, as amended, or

2. Dutiable in paragraph 389 on the nickel content; and the cobalt content granted free entry in paragraph 1652, or

3. Whether the commodity is commingled within the meaning of section 508, as amended, and classifiable in paragraph 389.

Both of plaintiff's witnesses were highly informed by training and experience in the field of metallurgy and their testimony is not rebutted.

The subject merchandise is derived from a nickel-bearing ore (exhibit 4) by chemical means. It appears from the record that the importations, represented by exhibits 1–A and 1–B, consist of a mixture of nickel and cobalt in powder form, which has been briquetted for convenience in handling, transportation, and melting. (It was conceded by the parties that the commodity is not an alloy.) The record clearly establishes that the nickel and cobalt in the briquettes are not chemically combined but exist as a simple physical mixture.

Analysis of a number of batches of the mixed metal briquettes indicates a nickel content varying from 50.1 per centum to 58.6 per centum and the cobalt content varying from 41.1 per centum to 49.2 per centum, the remaining percentages consisting of traces of unrecovered metals.

The witness Pearce described in detail, unnecessary to repeat here, the production of the ore and the subsequent processing to produce the merchandise in controversy. He stated that the nickel and cobalt metals contained therein could be recovered by further processing by chemical means from merchandise such as exhibits 1–A and 1–B.

It appears from the record that, in 1956 and 1957, there was an acute shortage of nickel. Senate Report 2710, which accompanied H.R. 8636, in explaining Public Law 723, *supra*, contains the following observation:

A critical shortage of nickel exists in the United States. Defense needs are large and there is no foreseeable domestic supply adequate for those needs.

The General Electric Co., the ultimate consignee of the merchandise here under consideration, was sensitive to this shortage and searched the markets for nickel to supply its needs. This led to information that the Sherritt Gordon Mines, Ltd., in Saskatchewan Province, Canada, was producing a native ore from which materials like exhibits 1–A and 1–B were obtained and General Electric immediately entered into a contract for the purchase of the imported commodity.

The General Electric Co. utilized the importation as part of the basic furnace charge in the production of what is known as Alnico magnet alloys. Virgin nickel and virgin cobalt, if both were available, could be used in the same manner. For the purposes of General Electric, it was not necessary to separate the two metals before contributing them to the basic furnace charge.

As stated by the witness, Canning:

Our practice for utilizing this charge, first, it is necessary for us to have an accurate assay of the material. It is charged then according to its composition. We perform our assay, and accordingly determine that there are so many pounds of cobalt and so many pounds of nickel in that material. It is added accordingly, just as we add any of the other basic metals to our charge.

Later in his testimony, Canning testified:

These briquettes were added in the same manner as we add our other metal constituents. Actually they are weighed up in tote boxes and merely added to the furnace charge and melted down in the same manner as we would when using solid nickel or cobalt or any other metal in the charge.

In the light of the foregoing circumstances, plaintiff contends, primarily, that the broad and comprehensive terms of paragraph 1734, as amended, *supra*, in clear and unambiguous language, embrace the subject merchandise.

Paragraph 1734, as enacted June 17, 1930, was limited to ores of gold, silver, or nickel; nickel matte; nickel oxide; ores of the platinum metals; and sweepings of gold and silver.

The language added by Public Law 723 reads:

nickel-containing material in powder, slurry, or any other form, derived from ore by chemical, physical, or any other means, and requiring further processing for the recovery therefrom of nickel or other metals.

Obviously, the nickel-cobalt briquettes in controversy are:

(a) Nickel-containing material in powder * * * or any other form.

(b) Derived from ore by chemical, physical, or any other means.

(c) Requiring further processing for the recovery therefrom of nickel or other metals.

The mere fact that the purpose for which General Electric imported the commodity did not require the recovery therefrom of nickel or other metals is unimportant because it was unnecessary for General Electric to separate the metals before charging the furnace. If, however, it had become economically and commercially expedient to separate the nickel and cobalt, it could have been done by further processing.

Public Law 723 was clearly designed to meet the emergency and grant exemption from duty to nickel. It may be noted in passing that cobalt is on the free list in paragraph 1652.

The defendant, in its brief, argues at considerable length that the briquettes in controversy are not within the purview of paragraph 1734 primarily because:

The involved briquettes, in their imported condition are unquestionably not the natural product of the mine, and, therefore, they are not to be regarded and treated as being "ore" for tariff classification purposes.

and cites several decisions of our appellate court as authority for the statement.

Defendant further argues that in briquetted form, not powdered form, the merchandise does not meet the definition of a concentrate, as set forth in *United States* v. *C. J. Tower & Sons*, 43 C.C.P.A. (Customs) 49, C.A.D. 608.

As we understand the issue presented by plaintiff upon the particular point under consideration, it is not contended that the nickel-cobalt briquettes are to be "regarded and treated as being 'ore' " for tariff classification purposes; neither is it contended that the imported material is a concentrate within the concept of the *Tower* case. Paragraph 1734, as originally enacted, provided, among other things, for nickel in the form of ores, matte, and nickel oxide. By Public Law 723, paragraph 1734 has been broadened to embrace nickel-containing material in any form, derived from ore by any means, and requiring further processing for the recovery therefrom of nickel or other metals.

In view of the obvious liberal purpose of Congress to meet the pressing need of nickel in this country, as reflected in the broad language of Public Law 723, amending paragraph 1734, we find upon the record before us and for the stated reasons that the subject merchandise is entitled to free entry in paragraph 1734, as amended, *supra*, and that claim in the protest is sustained. In view of this conclusion, we do not reach the alternative claims presented by plaintiff, as we deem none of them more specific.

Judgment will issue accordingly.